# EXHIBIT D

FILED
2/26/2020 11:17 PM
Mary Angie Garcia
Bexar County District Clerk
Accepted By: Brenda Carrillo

Case 5:20-cv-00299-JKP-RBF   Document 1-4   Filed 03/11/20   Page 2 of 28

# 2020CI03989

No._____

| | | |
|---|---|---|
| **Larry G Yarbro,** | § | IN THE DISTRICT COURT OF |
| *Plaintiff(s),* | § | |
| | § | |
| v. | § | **BEXAR** COUNTY, TEXAS |
| | § | |
| **The Money Source Inc.,** | § | 438TH JUDICIAL DISTRICT |
| *Defendant(s),* | § | _____ |
| | § | |

## PLAINTIFF' ORIGINAL PETITION FOR DECLARATORY JUDGMENT AND APPLICATION FOR TEMPORARY RESTRAINING ORDER AND INJUNCTIVE RELIEF

TO THE HONORABLE JUDGE OF THE COURT:

NOW COMES LARRY G YARBRO, the Plaintiff, complaining of Defendant THE MONEY SOURCE INC., and would show the Court the following:

### Discovery Control Plan

1. LARRY G YARBRO proposes that discovery in this case be conducted under Discovery Control Plan Level 2. Tex. R. Civ. P. 190.3

### Parties

2. LARRY G YARBRO fka Stephanie A Cranford is a natural person whose homestead is in BEXAR County Texas.

3. Defendant, THE MONEY SOURCE INC., is a national banking company and may be served with process by and through its registered agent, Registered Agent Solutions, Inc., at 211 E. 7th St. Suite 620, Austin, Texas 78744.

### Venue and Jurisdiction

4. This Court has jurisdiction over the subject matter of this case because the amount in controversy exceeds this Court's minimum jurisdictional requirements.

5. The Court has personal jurisdiction over the Defendant under Sec. 17.003 of the Texas Civil Practices and Remedies Code, because the real property, the subject of this lawsuit, is located in Texas.

6. Venue in BEXAR County, Texas is proper in this cause under Section 15.011 of the Texas Civil Practice and Remedies Code because the real property, the subject of this lawsuit, is situated in BEXAR County, Texas.

Unofficial Copy

## Brief Summary

7. The March 3, 2020, scheduled substitute trustee sale of the Property (the "Substitute Trustee Sale") is unlawful because the Plaintiff sent the Defendant a Qualified Written Request ("QWR"), pursuant to **RESPA, 12 USC §2605(e)**; however, the Defendant did not cancel the Substitute Trustee Sale until the loan servicer fully responds to the QWR as required under **12 C.F.R 1024.35(b)(9) and (10) and 1024.35(e)(3)(i)(B)**. Furthermore, the Defendant violated the **Dual Tracking Provisions of Regulation X (RESPA) 12 CFR 1024.41(g)**; additionally, the Defendant did not comply with HUD regulations as required by law.

## Factual Background

**The Property**

8. The Plaintiff is the owner of the property located at **8606 Gavel Road, Converse, Texas 78109** ("Homestead" or "Property" or "real property"). The Plaintiff resides at this address, which is his homestead.

**Deed of Trust.**

9. February 23, 2016, the Plaintiff closed on a purchase money loan for $171,444, secured by a Deed of Trust (DOT).

10. The DOT secures a lien on an FHA loan, FHA Case No. 514-0905850-703-203B.

11. CIS Financial Services, Inc. dba Home Loans is the original lender.

12. Chicago Title Company is the original trustee.

13. THE MONEY SOURCE INC. is the current lender/mortgagee.

14. THE MONEY SOURCE INC. is the current loan servicer.

15. **Attorneys of Codilis & Moody, P.C.** are designated as the purported current trustee.

16. According to the BEXAR County Appraisal District the value of the property is $221,030.

17. The monthly mortgage is $1,448.48.

18. Reinstatement Amount is approximately $25,992.

19. The estimated payoff approximately $183,519.

20. The Plaintiff has over $35,000 in equity.

21. The Plaintiff has never applied for a temporary restraining order to stop a foreclosure.

22. The Plaintiff has a buyer ready, willing and able to close and pay off the Defendant in full within 30 days.

23. Recently, the purported current trustee posted a Substitute Trustee Sale Notice in the BEXAR

Unofficial Copy

County Clerk's Office.

**Qualified Written Request re: Notice of Error Prohibiting Foreclosure**

24. February 24, 2020, the Plaintiff sent the Defendant a QWR pursuant to RESPA, 12 USC §2605(e). See Exhibit A.

25. The QWR included a notice of error that 12 C.F.R 1024.411(g) prohibited the loan servicer from foreclosing.

26. Regulation X, 12 C.F.R 1024.35(b)(9) and (10) and 1024.35(e)(3)(i)(B) prohibit a loan servicer from foreclosing on a borrower before fully responding to a QWR or correcting the errors pointed out in the QWR relating to12 C.F.R 1024.41(g).

27. Neither the Defendant nor the Servicer have responded to the Plaintiff's QWR. Therefore, the March 3, 2020 scheduled Substitute Trustee Sale of the property is unlawful.

28. If the foreclosure is not postponed until the loan servicer responds to the QWR, the Plaintiff will suffer irreparable harm by losing title to his homestead and his equity.

**Loss Mitigation Application**

29. In December 2019, the Plaintiff submitted a completed loan modification application to the loan servicer. On that date the Plaintiff submitted all required completed loan modification forms, signed and dated, and submitted all required supporting documents, as specified on the loan servicer's Website.

30. However, to date none of the representatives of the current or prior loan servicer have sent the Plaintiff a rejection letter denying the loss mitigation application and explaining that the Plaintiff is ineligible for any loss mitigation relief, and the appeal process has been exhausted or is inapplicable, as required by 12 C.F.R 1024.41(g).

**FHA Requirements**

31. The DOT states the Trustee cannot foreclose on the DOT without complying with any applicable Department of Housing and Urban Development (HUD) regulations restricting foreclosure of FHA loans.

32. Section 9d, page 7, of the DOT states the Trustee cannot foreclose on the DOT without complying with any applicable Department of Housing and Urban Development (HUD) regulations restricting foreclosure of FHA loans.

33. 24 CFR 203.604(b) requires the mortgagee to have a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments

Unofficial Copy

due on the mortgage are unpaid, provided the mortgagor resides in the house, the loan servicer has an office within 200 miles of the mortgagor's residence, and the mortgagor has not clearly indicated that he or she will not cooperate (24 CFR 203.604(c)).

34. The Plaintiff resides at the Property, which is the Plaintiff's homestead.

35. The loan servicer assigned a Single Point of Contact (SPOC).

36. The Plaintiff stated that he spoke with the single point of contact (the "SPOC") on numerous occasions in applying for a loan modification and the SPOC or any other staff of the loan servicer did not reach out to the Plaintiff to arrange such a Face-to-Face meeting.

37. The Defendant has at least one office in BEXAR County or surrounding counties within 200 miles of the Property.

38. If the foreclosure is not postponed until the loan servicer complies with the FHA rules as required by law, the Plaintiff will suffer irreparable harm by losing title to his homestead and his equity.

39. Because the Defendant refuses to postpone the Substitute Trustee Sale, even though it is not in compliance with the law, the Plaintiff is incurring legal fees.

<u>**Arguments**</u>

**Violation of Dual Tracking Provisions of Regulation X,**

**12 C.F.R 1024.35(b)(9) and (10) and 1024.35(e)(3)(i)(B) and 12 CFR 1024.41(g)**

40. The Substitute Trustee Sale is unlawful because the Plaintiff sent the Defendant a QWR, pursuant to RESPA, 12 USC § 2605(e); however, the Defendant did not cancel the Substitute Trustee Sale until the loan servicer fully responds to the QWR as required under the statute and regulations.

41. As stated, February 24, 2020, 2019, Plaintiff sent Defendant a QWR pursuant to RESPA, 12 USC § 2605(e), more than seven days for the March 3, 2020 scheduled substitute trustee sale.

42. The QWR included a notice of error that **12 C.F.R 1024.35(b)(9) and (10) and 1024.35(e)(3)(i)(B) and 12 CFR 1024.41(g)** prohibited the loan servicer from foreclosing until the loan servicer corrected the error and fully responded to the QWR.

43. Regulation X, **12 C.F.R 1024.35(b)(9) and (10) and 1024.35(e)(3)(i)(B)** prohibit a loan servicer from foreclosing on a borrower before fully responding to a QWR or correcting the errors pointed out in the QWR relating to **12 CFR 1024.41(g)**.

Unofficial Copy

44. Neither the Defendant nor the Loan Servicer have responded to the Plaintiff's QWR. Therefore, the March 3, 2020 scheduled Substitute Trustee Sale of the property is unlawful.

45. *See Renfroe v. Nationstar Mortg.*, LLC, 822 F.3d 1241, 1244 (2016)(*stating* "Basically, a servicer must respond by fixing the error, crediting the borrower's account, and notifying the borrower; or by concluding that there is no error based on an investigation and then explaining that conclusion in writing to the borrower. *See* 12 U.S.C. § 2605(e)(2); 12 C.F.R. § 1024.35(e)(1)(i).").

46. *See Kapsis v. American Home Mortg. Servicing Inc.*, 923 F.Supp.2d 430, 444 (2013) (stating, "If a servicer of a 'federally related mortgage loan' receives a QWR from a borrower or an agent of the borrower, 'the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days [changed to 7 days by February 5014 Dodd-Frank amendments to regulation X] (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period.' The servicer shall immediately 'make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower written notification of such correction (which shall include the name and telephone number of a representative ... who can provide assistance to the borrower).' Additionally, after receiving a QWR, a servicer must conduct an investigation and respond within 60 days with a written explanation that includes 'a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer' and 'the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower. A servicer subject to RESPA who fails to comply with either of these requirements is subject to actual damages, costs, and, 'in the case of a pattern or practice of noncompliance with the requirements of [Section 2605]', statutory damages.'"; See 12 USC 2605(k)(1)(C); See Consumer Financial Protection Bureau, Mortgage Servicing Rules under the Real Estate Settlement Procedures Act (Regulation X), 78 Fed. Reg. 10696-01, 10737, 10753, 10763, 10822 (Feb. 14, 2013) (codified 12 CFR pt. 1024).

47. Violation of RESPA, 12 USC § 2605(e) provides a private right of action for borrowers of federally insured loans. *Henok v. Chase Home Finance, LLC*, 915 F.Supp.2d 109 (*D.D.C.*2013) (stating, "Mortgagor's allegation that he sent letters to mortgagee and its foreclosure agent requesting cure amount before the foreclosure on his property and that mortgagee and its agent failed to respond to the letters stated a claim against mortgagee under RESPA for failure to respond to borrower inquires, where mortgagor attached two letters addressed to mortgagee and agent which

Unofficial Copy

included name of mortgagor, address of property, and directly requested amount to cure his default."). As stated above, the DOT secures a lien on an FHA loan, FHA Case No. 514-0905850-703-203B.

48. Upon receipt of a valid QWR including a notice of error relating **12 CFR 1024.41(g)**, **12 C.F.R 1024.35(b)(9) and (10) and 1024.35(e)(3)(i)(B)** require a mortgagee and loan servicer to stop the foreclosure process. *Stroman v. Bank of America Corp.*, 852 F.Supp.2d 1366, (N.D.Ga. 2012) (stating, "Mortgagor stated a claim for violation of RESPA, by alleging that loan servicers failed to timely and properly acknowledge and respond to her qualified written requests (QWRs), some of which she attached to her complaint as an exhibit, failed to take corrective action identified in the QWRs, failed to provide her information requested in the QWRs, failed to cease their collection efforts after receiving the QWRs, and provided erroneous information to credit bureaus related to alleged overdue payments disputed in her QWRs, which damaged her credit score and reduced her access to credit."). See *Sutton v. CitiMortgage, Inc.*, 228 F. Supp. 3d 254, 264 (US Dist. Ct. South Dist. of NY Jan 12, 2017).

49. The damages the Plaintiff must plead under RESPA is met by including allegations in this petition that the loan servicer misapplied payments, late charges, and/or escrow charges, or alleging the Plaintiff will suffer irreparable harm unless the foreclosure sale is postponed. *Agustin v. PNC Financial Services Group, Inc.*, 707 F.Supp.2d 1080 (D. Hawaii, 2010) (stating, "Allegations that borrowers sent written requests to lender for information relating to home refinancing loans, and that lender failed to take action with respect to these requests, causing them actual damages, were sufficient to state a claim under Real Estate Settlement Procedures Act (RESPA), even though borrowers did not plead pecuniary damages.").

**Violation of HUD Regulations Governing the Foreclosure of FHA Loans,**
**24 CFR 203.604**

50. As stated, 24 CFR 203.604(b) requires the loan servicer to have a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid, provided the mortgagee resides in the house, the mortgagee has a plurality of offices in BEXAR County Texas within 200 miles of the mortgagor's residence, and the mortgagor has not clearly indicated that she will not cooperate (24 CFR 203.604(c)).

51. The original mortgagee agreed in the DOT, that for purposes of foreclosing under the DOT,

Unofficial Copy

presupposing the Plaintiff' default in making payments under the DOT, the mortgagee would nonetheless comply with HUD regulations, as well as state law.  This covenant gives rise to the Plaintiff' private cause of action and distinguishes this case from *Roberts v. Cameron-Brown Co.*, 556 F.2d 356 (1977).

52. *Roberts* holds that the HUD handbook, which at the time was not a regulation and was not expressly written into the DOT, did not give rise to a private cause of action to a borrower attempting to avoid foreclosure.  However, that case is inapplicable to these facts.

53. In *Lacy-McKinney v. Taylor Bean & Whitaker Mortg. Corp.*, 937 N.E.2d 853 (2010), the Indiana Court of Appeals cited to recent federal district court cases holding that the aforementioned HUD regulations provides an affirmative defense to a homeowner in a foreclosure proceeding, and noted that the HUD regulations have force of law, and could give rise to a cause of action for a homeowner, because the home owner is an intended beneficiary of the HUD regulations, citing 24 CFR 203.556(b).

54. In this case, the HUD regulations are expressly incorporated into the DOT and are a condition precedent to foreclosure.

55. In *Roberts v. Cameron–Brown Co.,* 556 F.2d 356 (5th Cir.1977), the mortgagor cited noncompliance with the policy guidelines set forth in the HUD Handbook as a defense to foreclosure on an HUD-insured mortgage. At that time, the contact requirement of a face-to-face meeting had not yet been published in the Federal Register and the CFR. The trial court rejected Roberts's use of the guidelines as a defense stating that the government did not publish the Handbook, thus prohibiting it from having the force and effect of law. *Roberts,* 556 F.2d at 361. *Lacy-McKinney* stated that *Roberts* is not controlling in that case for the following reasons:

> "Since *Roberts* was decided, the mortgage servicing requirements contained in the Handbook have been published in the Federal Register and The Code of Federal Regulations giving them the force and effect of law. Because of this fact, the precedential value of the *Roberts* case has been considerably lessened. Furthermore, *Roberts* dealt with the implication of a private cause of action and not with the assertion of an affirmative defense. Therefore, we believe that the holding in *Roberts* is not controlling in the case at hand."

*Lacy-McKinney* at 862 (citing to *Bankers Life Co. v. Denton,* 120 Ill.App.3d 576, 76 Ill.Dec. 64, 458 N.E.2d 203 (1983).

Unofficial Copy

56. Following reasoning similar to that found in *Denton,* the states of Florida, Maryland, and New York have likewise held that HUD servicing responsibilities may be raised as an affirmative defense in foreclosure actions even though the regulations do not create a private right of action. *See Cross v. Fed. Nat'l Mort. Ass'n,* 359 So.2d 464 (Fla.Dist.Ct.App.1978) (mortgagee's failure to provide defaulted HUD-insured mortgagor with notice required under mortgage servicing regulations was affirmative defense that precluded summary judgment in favor of mortgagee); *Wells Fargo Home Mortg., Inc. v. Neal,* 398 Md. 705, 922 A.2d 538, 547 (2007) (mortgagor may not wield HUD regulations as sword but may assert regulatory noncompliance as shield to foreclosure on HUD mortgage); *Federal Nat'l Mortg. Ass'n v. Ricks,* 83 Misc.2d 814, 372 N.Y.S.2d 485, 497 (N.Y.Sup.Ct.1975) (mortgagors may interpose as first defense, failure of mortgagee to comply with provisions of HUD Handbook).

57. Some courts have styled a mortgagee's noncompliance with HUD regulations as an equitable defense (unclean hands and failure to do equity). *See e.g., Heritage Bank, N.A. v. Ruh,* 191 N.J.Super. 53, 465 A.2d 547 (1983) (courts may exercise equity power in refusing to grant foreclosures when mortgagees have flagrantly disregarded forbearance or casting); *Fleet Real Estate Funding Corp. v. Smith,* 366 Pa.Super. 116, 530 A.2d 919 (1987) (summary judgment in favor of mortgagee reversed upon finding that court could exercise equity powers to restrict foreclosure by mortgagee who had not followed or applied forbearance provisions of the HUD regulations and Handbook).

58. The *Lacy-McKinney* court stated that it was problematic to treat such noncompliance merely as an equitable remedy. If noncompliance with HUD regulations is merely "unclean hands," a court may be precluded from requiring compliance in cases where the mortgagor is also deemed to have unclean hands. *See Ruh,* 465 A.2d at 558 (court of equity, fulfilling reasons and objects for its existence may, in furtherance of natural justice, aid one who is comparatively more innocent). Hence, the equitable approach is limited in its ability to promote a mortgagee's compliance with HUD regulations. Instead, the  *Lacy-McKinney* court agreed with the , reasoning of *Denton* and view the affirmative defense of noncompliance with HUD regulations as the failure of the mortgagee to satisfy a HUD-imposed condition precedent to foreclosure.

59. In this case, as stated, the HUD requirements are expressly written into the DOT.  Violation of 24 CFR 203.604 prohibits the Loan Servicer from foreclosing.

Unofficial Copy

### Conditions Precedent

60. Pursuant to Rule 54 of the Texas Rules of Civil Procedure, all conditions precedent have been performed or have occurred.

### Request for Temporary Restraining Order

61. Plaintiff requests the Court to dispense with the issuance of a bond, and Plaintiff requests that the Defendant be temporarily restrained, without hearing, and upon notice and hearing be temporarily enjoined, pending further order of this Court, from foreclosing on the Deed of Trust.

62. If a temporary restraining order is not issued today, the Defendant will sell the Plaintiff's homestead and the Plaintiff will be irreparably harmed as stated in the attached affidavit.

63. The Plaintiff is likely to succeed on the merits because, as stated above, the Plaintiff sent Defendant a QWR, pursuant to RESPA, 12 USC § 2605(e); however, the Defendant did not cancel the Substitute Trustee Sale until fully responding to the QWR as required under the statute and regulations; additionally, the Defendant did not comply with HUD regulations as required by law.

64. Granting the temporary restraining order is in the public interest, because enforcing contracts and discouraging foreclosures are in the public interest.

65. The Defendant may simply foreclose in 30 days, or recoup whatever expenses incurred by not foreclosing from the Plaintiff, which is permitted by the Deed of Trust; therefore, the potential harm to the Defendant is outweighed by the potential irreparable harm to the Plaintiff.

### Request for Temporary Order

66. Plaintiff requests that the Court, after notice and a hearing, without the necessity of a bond and to make temporary orders and issue any appropriate temporary injunctions deemed necessary and equitable by the Court.

### Attorney's Fees

67. Under Section 37.009, Tex Civ. Prac. & Rem Code, LARRY G YARBRO requests that the Court award them costs and reasonable and necessary attorneys' fees as are equitable and just against THE MONEY SOURCE INC.

### Prayer

WHEREFORE, PREMISES CONSIDERED, the Plaintiff prays for the following:

68. Prayer for Declaratory Relief

69. WHEREFORE Plaintiff prays that after notice and hearing the Court declares the Substitute Trustee Sale of the Property is unlawful and must be postponed until: (a) the loan servicer or the Defendant

Unofficial Copy

fully responds to the Plaintiff's QWR; and (b) the loan servicer or the Defendant provides Plaintiff with a rejection letter as required by the dual tracking provisions of Regulation X.

70. Prayer for Relief

WHEREFORE Plaintiff prays that the Court immediately grant a temporary restraining order restraining Defendant, in conformity with the allegations of this Plaintiff, from the acts set forth above, and Plaintiff prays that, after notice and hearing, this temporary restraining order be made a temporary injunction.

1. Plaintiff prays that the Court, in addition to the temporary restraining orders and temporary injunction order prayed for above, after notice and hearing, grant a temporary injunction enjoining Defendant, in conformity with the allegations of this Petition from the acts set forth above while this case is pending, and enter temporary orders as requested above.

2. Plaintiff prays for expenses, costs and interest as allowed by law.

3. Plaintiff prays for general relief.

Respectfully submitted,

/s/ James Minerve

_____

James Minerve
State Bar No. 24008692
115 Saddle Blanket Trail
Buda, Texas 78610
(888) 819-1440 (Office)
(210) 336-5867 (Cell)
(888) 230-6397 (Fax)
Email: jgminerve@aol.com
Attorney for Plaintiff LARRY G
YARBRO

Unofficial Copy

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true and correct copy of the above and foregoing document was sent to the following in accordance with the Texas Rules of Civil Procedure on this 26th day of February 2020:

Corporation Service Company, registered agent for
THE MONEY SOURCE INC.
211 E. 7th St., Suite 620
Austin, Texas 78701


/s/ James Minerve
_____
James Minerve

Unofficial Copy

**GENERAL AFFIDAVIT**

State of Texas                          §
County of _Bexar_                       §

**BEFORE ME**, the undersigned Notary, *Kevin Bierwirth* on this 26th day of *February*, 2020 LARRY G YARBRO personally appeared, known to me to be a credible person and of lawful age, who being by me first duly sworn, on his oath, deposes and says:

1. I, LARRY G YARBRO, am of sound mind and capable of making this affidavit. I have personal knowledge of the facts stated below. I understand that I can be held criminally responsible if I lie in this statement. This statement is true.

2. The March 3, 2020, scheduled substitute trustee sale of the Property (the "Substitute Trustee Sale") is unlawful because I sent the Defendant a Qualified Written Request ("QWR"), pursuant to **RESPA, 12 USC §2605(e)**; however, the Defendant did not cancel the Substitute Trustee Sale until the loan servicer fully responds to the QWR as required under **12 C.F.R 1024.35(b)(9) and (10) and 1024.35(e)(3)(i)(B)**. Furthermore, the Defendant violated the **Dual Tracking Provisions of Regulation X (RESPA) 12 CFR 1024.41(g)**; additionally, the Defendant did not comply with HUD regulations as required by law.

3. I am the owner of the property located at **8606 Gavel Road, Converse, Texas 78109** ("Homestead" or "Property" or "real property"). I reside at this address, which is my homestead.

4. February 23, 2016, I closed on a purchase money loan for $171,444, secured by a Deed of Trust (DOT).

5. The DOT secures a lien on an FHA loan, FHA Case No. 514-0905850-703-203B.

6. CIS Financial Services, Inc. dba Home Loans is the original lender.

7. Chicago Title Company is the original trustee.

8. THE MONEY SOURCE INC. is the current lender/mortgagee.

9. THE MONEY SOURCE INC. is the current loan servicer.

10. **Attorneys of Codilis & Moody, P.C.** are designated as the purported current trustee.

11. According to the BEXAR County Appraisal District the value of the property is $221,030.

12. The monthly mortgage is $1,448.48.

Page 1 of 3

Unofficial Copy

GENERAL AFFIDAVIT continued

13. Reinstatement Amount is approximately $25,992.

14. The estimated payoff approximately $183,519.

15. The Plaintiff has over $35,000 in equity.

16. I have never applied for a temporary restraining order to stop a foreclosure.

17. I have a buyer ready willing and able to close and pay off the Defendant in full within 30 days.

18. Recently, the purported current trustee posted a Substitute Trustee Sale Notice in the BEXAR County Clerk's Office.

19. February 24, 2020, I sent the Defendant a QWR pursuant to RESPA, 12 USC §2605(e). See Exhibit A.

20. The QWR included a notice of error that 12 C.F.R 1024.411(g) prohibited the loan servicer from foreclosing.

21. Regulation X, 12 C.F.R 1024.35(b)(9) and (10) and 1024.35(e)(3)(i)(B) prohibit a loan servicer from foreclosing on a borrower before fully responding to a QWR or correcting the errors pointed out in the QWR relating to12 C.F.R 1024.41(g).

22. Neither the Defendant nor the Servicer have responded to my QWR. Therefore, the March 3, 2020 scheduled Substitute Trustee Sale of the property is unlawful.

23. If the foreclosure is not postponed until the loan servicer responds to the QWR, I will suffer irreparable harm by losing title to my homestead and my equity.

24. In December 2019, I submitted a completed loan modification application to the loan servicer. On that date I submitted all required completed loan modification forms, signed and dated, and submitted all required supporting documents, as specified on the loan servicer's Website.

25. However, to date none of the representatives of the current or prior loan servicer have sent me a rejection letter denying the loss mitigation application and explaining that I am ineligible for any loss mitigation relief, and the appeal process has been exhausted or is inapplicable, as required by 12 C.F.R 1024.41(g).

26. The DOT states the Trustee cannot foreclose on the DOT without complying with any applicable Department of Housing and Urban Development (HUD) regulations restricting foreclosure of FHA loans.

27. Section 9d, page 7, of the DOT states the Trustee cannot foreclose on the DOT without

Unofficial Copy

GENERAL AFFIDAVIT CONTINUED

complying with any applicable Department of Housing and Urban Development (HUD) regulations restricting foreclosure of FHA loans

28. 24 CFR 203.604(b) requires the mortgagee to have a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid, provided the mortgagor resides in the house, the loan servicer has an office within 200 miles of the mortgagor's residence, and the mortgagor has not clearly indicated that he or she will not cooperate (24 CFR 203.604(c)).

29. I reside at the Property, which is my homestead.

30. The loan servicer assigned a Single Point of Contact (SPOC).

31. I spoke with the single point of contact (the "SPOC") on numerous occasions in applying for a loan modification and the SPOC or any other staff of the loan servicer did not reach out to me to arrange such a Face-to-Face meeting.

32. The Defendant has at least one office in BEXAR County or surrounding counties within 200 miles of the Property.

33. If the foreclosure is not postponed until the loan servicer complies with the FHA rules as required by law, I will suffer irreparable harm by losing title to my homestead and my equity.

34. Because the Defendant refuses to postpone the Substitute Trustee Sale, even though it is not in compliance with the law, I am incurring legal fees.


LARRY G YARBRO
8606 Gavel Road
Converse, Texas 78109


State of Texas                                §
County of Bexar                            §

Sworn to and subscribed before me on the 26th day of February, 2020, by LARRY G YARBRO.

KEVIN LA'NARD BIERWIRTH
Notary Public, State of Texas
Comm Expires 10-21-2021
Notary ID 128065653

Notary Public, State of Texas
My Commission Expires:_____


Page 3 of 3

Unofficial Copy



THE MINERVE LAW FIRM                                     Attorneys At Law

4510 Twin Timber Court
Fresno, Texas 77545
888-819-1440 Office
888-230-6397 Fax
210-336-5867 Cell
jgminerve@aol.com
www.minervelaw.com

4209 Gateway Dr., Ste. 200
Colleyville, Texas 76034
888-819-1440 Office
888-230-6397 Fax
210-336-5867 Cell
jgminerve@aol.com
www.minervelaw.com

13276 N Highway 183, ste. 209
Austin, Texas 78750
888-819-1440 Office
888-230-6397 Fax
210-336-5867 Cell
jgminerve@aol.com
www.minervelaw.com

115 Saddle Blanket Trail
Buda, Texas 78610
888-819-1440 Office
888-230-6397 Fax
210-336-5867 Cell
jgminerve@aol.com
www.minervelaw.com

February 24, 2020

VIA Email: ccare@themoneysource.com

The Money Source, Inc.
P.O. Box 619063
Dallas, Texas 75261

RE:    Borrower:       **Larry G Yarbro** (Hereafter "CLIENT(S)")
       Property:       **8606 Gavel Road, Converse, Texas 78109**
       Loan No:        0031839624

### RESPA QUALIFIED WRITTEN REQUEST,
### AND NOTICE OF ERROR

<u>This letter is a "qualified written request" In compliance with and under the Real Estate Settlement Procedures Act 12 U.S.C., Section 2605 (e) and Regulation X 24 C.F.R. 3500, and The Gramm Leach Bliley Act.</u>

Dear Madam or Sir:

Please be advised of your legal obligation to answer this additional Qualified Written Request and to obtain all records and documents pertaining to the above-mentioned Loan No. This request is made pursuant to the Real Estate Settlement and Procedures Act (RESPA). I have reason to believe that various Real Estate Settlement Procedures Act (RESPA) loan servicing errors may have occurred.

To ensure legal claims are brought against the appropriate parties I am requesting evidence to support or exclude LOAN SERVICER and to satisfactorily provide me a good clear and clean hands understanding and clarification of payments and records related to the servicing of this account from January 2020 to the present date.

**NOTICE OF ERROR: PROHIBITION ON FORECLOSURE**

Unofficial Copy



THE MINERVE LAW FIRM                                    Attorneys At Law

Concern: The Loan Servicer violated RESPA Regulation X (12 CFR 1024.41(g)).   The Borrower sent the loan servicer a completed loan modification application at least 37 days before the scheduled sale date, March 3, 2020.   However, to date the Loan Servicer has not provided the Borrower with a rejection letter explaining that the Borrower is ineligible for any loss mitigation assistance or appeal.

Request for Information:

1. Please provide a copy of the rejection letter sent to the Borrower from the Loan Servicer explaining that the Borrower is ineligible for any loss mitigation assistance, and that the appeal process has been exhausted, or is inapplicable, as required by Regulation X (12 CFR 1024.41(g)).

Concern: The Loan Servicer started the foreclosure process in violation of RESPA Regulation X (12 CFR 1024.41(f). Under this regulation the loan servicer is prohibited from sending the Borrower the first foreclosure notice before the borrower is more than 120 days delinquent.

2. Please provide evidence that the Borrower's account was at least 120 days delinquent before the Loan Servicer posted the Notice to Cure required by Texas Property Code 51.002.

**NOTICE OF ERROR**

Concern: It is my belief and understanding that abuses have deceptively, wrongfully, unlawfully, and/or illegally:
Increased the amounts of monthly payments,
Increased the principal balance CLIENT owe,
Increased the escrow payments,
Increased the amounts applied and attributed toward interest on this account,
Decreased the proper amounts applied and attributed toward principal on this account; and/or
Assessed, charged and/or collected fees, expenses and misc. charges CLIENT is not legally obligated to pay under this mortgage, note and/or Deed of Trust.

Request for Information:

1. I hereby demand that a chain transfer from the original lender or loan servicer to you be promptly sent to me.
2. An accurate breakdown of the principal balance you claim CLIENT owes; the calculated monthly payment, calculated escrow payment and any fees claimed to be owed by you or any trust or entity you may service or subservice for.
3. Each sale, transfer or assignment of this mortgage, monetary instrument, Deed of Trust or any other instrument CLIENT recorded in the county property records in the county and state in which CLIENT's property is located from the inception of this account to the present date.
4. If you cannot produce any instrument requested in 3 above, explain why.
5. Is your company the servicer of this mortgage account or the holder in due course and beneficial owner of this mortgage, monetary instrument and/or Deed of Trust?

Unofficial Copy



THE MINERVE LAW FIRM                                        Attorneys At Law

6.  Have any sales, transfers or assignments of this mortgage, monetary instrument, Deed of Trust or any other instrument CLIENT executed to secure this debt been recorded in any electronic fashion such as MERS or other internal or external recording system from the inception of this account to the present date? YES or NO?

7.  If yes, please detail for me the names of each purchaser, assignor, assignee, or any holder in due course to any right or obligation of any note, mortgage Deed or security instrument CLIENT executed securing the obligation on this account that was not recorded in the county records where CLIENT's property is located whether they be mortgage servicing rights or the beneficial interest in the principal and interest payments.

Very truly yours,

The Minerve Law Firm

By: /S/ JAMES MINERVE____
State Bar No. 24008692

Unofficial Copy

**CAUSE NO. _____**

| | | |
|---|---|---|
| **Larry G Yarbro,** | § | IN THE DISTRICT COURT OF |
| *Plaintiff(s),* | § | |
| | § | |
| v. | § | **BEXAR** COUNTY, TEXAS |
| | § | |
| **The Money Source Inc.,** | § | |
| *Defendant(s),* | § | _____ JUDICIAL DISTRICT |
| | § | |

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULES REGARDING NOTIFYING OPPOSING COUNSEL

### CERTIFICATE OF CONFERENCE

I, James Minerve, do hereby certify that I am the attorney for the Plaintiff Larry G Yarbro in the above captioned cause, that Sunday, January 5, 2020 at approximately 2 a.m. I faxed the trustee, **Codilis & Moody, P.C.**  a copy of the pleadings informing **Danya Gladney** that James Minerve will be appearing before the Bexar County District Court Thursday afternoon, February 27, 2020 around 1 p.m., to obtain a TRO; and will request the Court to sign the TRO Order ex parte; I requested that Ms. **Gladney** call James Minerve with the name and phone number of an attorney who can participate in the TRO hearing via phone, and included my cell number in the fax.  See attached Fax notice.

The information contained herein is within my knowledge, is true and correct to the best of my knowledge.

/s/ James Minerve
_____
James Minerve
State Bar No. 24008692
The Minerve Law Firm
115 Saddle Blanket Trail
Buda, Texas 78610
888-819-1440 Ext. 101 Office
888-230-6397 Fax
210-336-5867 Cell
jgminerve@aol.com
Attorney for Plaintiff Larry G Yarbro

Unofficial Copy

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document was sent to the following in accordance with the Texas Rules of Civil Procedure on this 26th day of February 2020:

**Danya Gladney**
**Codilis & Moody, P.C.**
**650 North Sam Houston Parkway, Suite 450**
**Houston, TX 77060**
**Fax: 281-925-5343**
**Direct Fax-281-925-5349**
**Phone: 281-925-5249**
**danya.gladney@tx.cslegal.com**


/s/ James Minerve
_____
JAMES MINERVE

Certificate of Compliance                    Page 2 of 2

Unofficial Copy

CAUSE NO. 2020CI03989

| | | |
|---|---|---|
| **Larry G Yarbro,** | § | IN THE DISTRICT COURT OF |
| *Plaintiff(s)*, | § | |
| | § | |
| v. | § | **BEXAR** COUNTY, TEXAS |
| | § | |
| **The Money Source Inc.**, | § | |
| *Defendant(s)*, | § | 438ᵗʰ JUDICIAL DISTRICT |
| | § | |

## TEMPORARY EX PARTE RESTRAINING ORDER, ORDER TO POST BOND, AND ORDER SETTING HEARING FOR TEMPORARY INJUNCTION AND TEMPORARY ORDERS

I.

On this 27 day of February 2020, Larry G Yarbro, Plaintiff in the above-entitled and -numbered cause, has filed and on this day presented an Original Petition containing Motions For Temporary Injunction and For Ex Partee Temporary Restraining Orders, with relevant and pertinent portions thereof supported with affidavits, pursuant to Section 5 of Part VI of the Texas Rules of Civil Procedure.

THE COURT, having examined the pleadings, FINDS that it clearly appears from the facts set forth in the affidavits and pertinent portions of Plaintiff Larry G Yarbro's Original Petition containing Motions For Temporary Injunction and For Ex Partee Temporary Restraining Orders that unless the Defendant THE MONEY SOURCE INC. is immediately restrained as Ordered, Adjudged, and Decreed below in this section `I', that such Defendant will irreparably cause harm to Larry G Yarbro before notice can be given and a hearing is had on Plaintiff's motion for a temporary injunction; because, the Defendant will foreclose on certain property specified in section I.

IT IS, THEREFORE, ORDERED, ADJUDGED, AND DECREED that the clerk of this Court issue a temporary restraining order, in this cause, immediately restraining Defendant, THE MONEY SOURCE INC. from the following acts from the date of signing of this order until and to the fourteenth day after the signing of this order or until further order of this Court:

1.   The sale scheduled to be held on March 3, 2020 by the trustee, **attorneys of Codilis & Moody, P.C.**, in the area of the BEXAR COUNTY Courthouse in San Antonio, Texas, designated by the Commissioner's Court pursuant to Section 51.002 of the Texas Property Code as a place where the foreclosure sale is to take place of **8606 Gavel Road, Converse, Texas 78109.**

2.   Reposting said property for foreclosure sale or otherwise engaging in any foreclosure preparatory activities.

IT IS ORDERED, ADJUDGED, AND DECREED that the foregoing orders shall be binding on Defendant; on Defendant's agents, servants, and employees; and on those persons in active concert or participation with them who receive actual notice of these Orders by personal service or otherwise.

IT IS ORDERED, ADJUDGED, AND DECREED that Plaintiff post a bond of

$500 .

II.

IT IS FURTHER ORDERED that the Clerk shall issue notice to Defendant THE MONEY SOURCE INC. to appear and such Defendant is hereby ordered to appear, before this Court in the Bexar County Courthouse at 100 Dolorosa, Room 109 , Texas 78205 on March 12 , 2020, at 9 : 00 a .m., to show cause, if any, why the following temporary injunctive and other interim relief should not be granted as requested by Plaintiff during the pendency of this cause:

1.  That the preceding temporary restraining orders in sections `I' be made a temporary injunction pending final hearing in this cause;

2.  That the additional orders and temporary injunctions requested by Plaintiff be granted;

3.  That all other orders should be entered or further relief granted respecting the parties as pled for by Plaintiff in Plaintiff's Original Petition in this cause.

UPON THE PLAINTIFF POSTING A BOND OF $500 , THE CLERK OF THIS COURT IS DIRECTED TO ISSUE A TEMPORARY RESTRAINING ORDER IN CONFORMITY WITH THE LAW AND THE TERMS OF THIS ORDER.

SIGNED on Feb. 27 , 2020, at 1:45 o'clock p .m.

_____
JUDGE PRESIDING

Approved as to Substance and Form

/s/ James Minerve

_____

James Minerve
State Bar No. 24008692
115 Saddle Blanket Trail
Buda, Texas 78610
(888) 819-1440 Office
(210) 336-5867 Direct
(888) 230-6397 Fax
jgminerve@aol.com
Attorney for Plaintiff
**Larry G Yarbro**

Aaron S. Haas
Presiding Judge
285th District Court
Bexar County, Texas

2020CI03989 -B00001

CAUSE NO. 2020CS03989

FILED
DISTRICT CLERK
BEXAR CO. TEXAS
20 FEB 27 PM 2: 21
DEPUTY
BY____

| | | |
|---|---|---|
| **Larry G Yarbro,** | § | IN THE DISTRICT COURT OF |
| *Plaintiff(s),* | § | |
| | § | |
| v. | § | **BEXAR** COUNTY, TEXAS |
| | § | |
| **The Money Source Inc.,** | § | |
| *Defendant(s),* | § | 428th JUDICIAL DISTRICT |
| | § | |

## TEMPORARY RESTRAINING ORDER BOND

STATE OF TEXAS            §
COUNTY OF BEXAR       §

On **February 27, 2020 Larry G Yarbro**, Plaintiff in the above-entitled and -numbered cause, has filed and on this day presented an Original Petition containing Motions For Temporary Injunction and For Ex Partee Temporary Restraining Orders, with relevant and pertinent portions thereof supported with affidavits, pursuant to Section 5 of Part VI of the Texas Rules of Civil Procedure; and the clerk of this Court issued a temporary restraining order, in this cause, immediately restraining Defendant, **The Money Source Inc.**;

from conducting a substitute trustee sale of 8606 Gavel Road, Converse, Texas 78109, scheduled for **March 3, 2020** by the reputed substitute trustee **Attorneys of Codilis & Moody** In the area of the BEXAR County Courthouse in BEXAR, Texas, designated by the Commissioner's Court pursuant to Section 51.002; for 14 days from the date of signing of this order or until further order of this Court;

now, therefore, the said **Larry G Yarbro**, and her surety, covenant that Plaintiff will prosecute his petition with effect and pay **The Money Source Inc.** all costs and damages which may be adjudged against the Plaintiff, provided the surety shall not be liable in an amount greater than $500.00 said amount being amount of the bond herein.

Given under our hands on February 27, 2020

Principal
Larry G Yarbro

State of Texas            §
County of Bexar       §

Sworn to and subscribed before me on the 27th day of February 2020.

Notary Public, State of Texas
My Commission Expires:____

CAUSE NO. _2020_____

_[signature]_

Surety
James Minerve
115 Saddle Blanket Trail
Buda, Texas 78610
210-336-5867

State of Texas            §
County of _Williamson_ §

Sworn to and subscribed before me on the _27th_ day of February 2020.

_[signature]_

Notary Public, State of Texas
My Commission Expires:_____

APPROVED ON THIS _27th_ DAY OF _FEBRUARY_ 20. _20_

DEPUTY:_____

DISTRICT CLERK
BEXAR COUNTY, TEXAS

TRO Bond

CAUSE NO. 2020CI03989

| | |
|---|---|
| **Larry G Yarbro,** | § IN THE DISTRICT COURT OF |
| *Plaintiff(s),* | § |
| | § |
| v. | § **BEXAR** COUNTY, TEXAS |
| | § |
| **The Money Source Inc.,** | § |
| *Defendant(s),* | § 438 JUDICIAL DISTRICT |
| | § |

## OATH OF SURETY

THE STATE OF TEXAS      §
THE COUNTY OF *Bexar*      §

BEFORE ME, the undersigned authority, on this day personally appeared James Minerve, a surety on the annexed TRO Corporate Surety Bond, thereon, and after being by me duly sworn, depose and say that he/she is the General Counsel and Shareholder of <u>CCS Asset Management Inc</u>. a Texas Corporation, that the company is worth the sum of \$250,000.00 dollars, over and above all just debts and liabilities, said property subject to execution and sale *(property cannot be part of a homestead),* and that his/her property consists of *(Description of PERSONAL or REAL PROPERTY):*

_____Net Worth of \$250,000.00 _____

Where is property located: Company Balance Sheet in general ledger at Chase, 1415 Main St Ste 100, Dallas, TX 75202
PRINT Name of Surety:       Shares in CCS Asset Management Inc
Surety's Tax ID:                 46-4001040
Surety's Office Address:     111 Congress Ave, 4th Floor, Austin, Texas 78701
Surety's Office Phone: 888-819-1440

CCS Asset Management Inc.

By _____
James Minerve, General Counsel and Shareholder
(signature of surety)

State of Texas           §
County of *Bexar*      §

Subscribed and Sworn to before me this, 27 day of February 2020.

Notary Public in and for the State of Texas

_____
Printed Name of Notary
My Commission expires: _____

FILED
3/11/2020 11:51 AM
Mary Angie Garcia
Bexar County District Clerk
Accepted By: Krystal Thomas

Case 5:20-cv-00299-JKP-RBF   Document 1-4   Filed 03/11/20   Page 26 of 28

## CAUSE NO. 2020CI03989

| | | |
|---|---|---|
| **LARRY G. YARBRO,** | § | **IN THE DISTRICT COURT** |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **438TH JUDICIAL DISTRICT** |
| | § | |
| **THE MONEY SOURCE, INC.,** | § | |
| | § | |
| *Defendant.* | § | **BEXAR COUNTY, TEXAS** |

## DEFENDANT'S ANSWER WITH AFFIRMATIVE DEFENSES

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, The Money Source, Inc. ("Defendant"), Defendant in the above-styled and numbered cause, and files this Answer with Affirmative Defenses in response to Plaintiff Larry G. Yarbro's ("Plaintiff") Original Petition for Declaratory Judgment and Application for Temporary Restraining Order and Injunctive Relief ("Petition"). In support of the foregoing, Defendant would respectfully show the Court the following:

### I.
### GENERAL DENIAL

1.      Pursuant to Rule 92 of the Texas Rules of Civil Procedure, Defendant generally denies each and every allegation contained within Plaintiff's Petition and any amendments thereto and demands strict proof thereof as required by the Constitution and the laws of the State of Texas. Defendant further reserves the right to plead further and in greater particularity as the case progresses.

### II.
### AFFIRMATIVE DEFENSES

2.      Defendant asserts that all conditions precedent to Plaintiff's rights to recover, if any, have not been satisfied, have not occurred or have not been waived.

3.     In addition to and/or alternatively, without waiving the foregoing, Plaintiff's claims are barred by the statute of frauds.

4.     In addition to and/or alternatively, without waiving the foregoing, Plaintiff's damages, if any, which Defendant does not admit, were caused in whole or in part by Plaintiffs' own acts, negligent or otherwise, and Defendant is thus not liable.

5.     In addition to and/or alternatively, without waiving the foregoing, Plaintiff's claims are barred due to Defendant's compliance with the terms of the Deed of Trust and the Texas Property Code.

6.     In addition to and/or alternatively, without waiving the foregoing, Defendant asserts that Plaintiff failed to mitigate his alleged damages, if any, which damages are strictly denied by Defendant.

### III.
### PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendant The Money Source, Inc. prays that Plaintiff's Petition be dismissed and that Plaintiff take nothing by way of his claims. Defendant further requests that judgment be granted in its favor with respect to all claims asserted by Plaintiff, and for all further and other relief, whether at law or in equity, to which Defendant may be justly entitled.

Respectfully submitted,

By:     */s/ Mark D. Hopkins*
        Mark D. Hopkins
        Hopkins Law, PLLC
        State Bar No. 00793975
        3809 Juniper Trace, Suite 101
        Austin, Texas 78738
        (512) 600-4320
        mark@hopkinslawtexas.com

        OF COUNSEL TO:
        **CODILIS & MOODY, P.C.**

        Danya Gladney
        State Bar No. 24059786
        Codilis & Moody, P.C.
        400 North Sam Houston Parkway East
        Suite 900A
        Houston, Texas 77060
        (281) 925-5243
        (281) 925-5343 Fax
        Danya.Gladney@tx.cslegal.com

        **ATTORNEYS FOR DEFENDANT
        THE MONEY SOURCE, INC.**

## CERTIFICATE OF SERVICE

Pursuant to Texas Rules of Civil Procedure, I certify that a true and correct copy of the foregoing has been sent on this the 11th day of March 2020 to all parties of record the method indicated below.

***VIA E-SERVICE*:**
James Minerve
115 Saddle Blanket Trail
Buda, Texas 78610
jgminerve@aol.com
**ATTORNEY FOR PLAINTIFF**

                        */s/ Mark D. Hopkins*
                        Mark D. Hopkins